Please the court. My name is Jack Price. I represent Richard Lee Pollard, the plaintiff appellate in this matter. Mr. Pollard is a federal prisoner. He comes before this court seeking to enforce his constitutional rights. The district court in this case, and the defendants as well, believe he should not be able to do so for two reasons. First, they argue that he has no constitutional rights because his government placed him in a private prison. And second, they argue that even if he does have constitutional rights, he may not enforce those rights because he has other rights he must enforce instead. I'd like to begin first with the federal action argument in this case, Your Honor. Both the points of the defendants in this case are incorrect. On the federal action issue, it comes down to this. The federal government may not dispose of our constitutional rights through a contractual sleight of hand. If the defendant's position is correct, then quite plainly, the federal government could dramatically change how freedoms are understood in America. This is a truly radical proposition, and it should not be surprising that it's against the great weight of precedent. So you have two courts of appeals who have adopted this radical proposition. I do, Your Honor. I think they have made a big mistake. Their mistake happens to be the fact that the federal government may not dispose of our constitutional rights. And they, of course, did not have to do that. They could have gone to the second issue. And just resolved it on the Bivens issue exactly. That's what makes these decisions, I think, quite confusing. The Bivens cause of action, as you understand, has two reasons why the court will not imply a Bivens cause of action. There's substantial, excuse me, there's significant factors that will preclude Bivens, or there's alternative remedies. Special factors, actually, it's called. These courts held that the lack of federal action is a special factor. It's completely irrelevant. That's a constitutional issue. Whether you have a constitutional right requires federal or state action has nothing to do with Bivens. You either have a Bivens cause of action or you don't have a Bivens cause of action. It has nothing to do with federal action. So I think the courts missed it there. But speaking directly to federal action in this case, the reason why it exists here is quite plainly West v. Adkins. The court there said that an independent contractor hired by the state to treat a prisoner was a federal, excuse me, a state actor. The key analysis for the court was the physician's function. I'm quoting, the physician's function within the state system, not the precise terms of his employment. So there are two circuits that appear to have gone otherwise on this particular Bivens issue. But there's many, many other courts who have held the exact opposite. In this particular instance, there is definitely federal action. You know, I really have more of a question on the second ground. Yes, Your Honor. Okay. Here we have a fellow who had a very fine opportunity to bring a state cause of action for medical malpractice. This isn't a case where you're dealing with First Amendment rights and we don't know how to pursue these things. It's medical malpractice, basically. They could have brought that state court action. Yet you want the court to imply a Bivens action, an implied Bivens action. Two answers to that, Your Honor. First, it's not at all clear that he has a medical malpractice relief for all of his wrongs. He's alleged quite plainly in his complaint that when he has two broken arms, he has no way to feed himself. What is the tort claim for the inability to feed oneself while they're in prison? Now, certainly at some point, the prison has an obligation under the Eighth Amendment to provide you some means to feed yourself. So I think sometimes it appears to us that there's plainly a med mal claim. But that doesn't work for all his claims. And recall that the specific principle of Bivens is deterring individual actors. So if you allow Pollard, or excuse me, if you tell Pollard in this case, bring your claim for med mal against those doctors, how does that deter the people in the prison who aren't subject to med mal claims? There's another point here which I think is just as important. Suppose all he had was med mal claims. That doesn't matter in my view. He wants to enforce his constitutional rights, and Carlson v. Green says it doesn't matter. He doesn't have to choose. Some people may want to choose their tort rights. Some people may prefer their medical malpractice rights. There's a choice of remedy doctrine throughout all of tort and contract. There's no reason why under Carlson v. Green he should be precluded. Now, I think if the court believes that there's federal action clear in this case, I think that puts this squarely in Carlson v. Green. Carlson v. Green was a federal prisoner suing a federal actor for a violation of his federal constitutional rights. Pollard is a federal prisoner suing a federal actor, violation of his federal constitutional rights. And were there state law remedies available in Carlson? Absolutely they were, Your Honor. The court said that the state law remedies, it was the FTCA which operated through state law, the Federal Tort Claims Act. No, that's not a state law remedy, the Federal Tort Claims Act. It just refers to state law for some of its principles, but it's not a state law remedy. You're correct, Your Honor. A limited remedy under federal law. It's an alternative remedy. And the court there said the alternative remedy should not stand in the way. If the alternative remedy should not stand in the way there, why should it stand in the way here? The whole point of alternative remedies is even less relevant in a case where it involves a state law cause of action. Alternative remedies came about because the court saw after 1971 in Bivens that there might be some occasions where Congress wanted to take the lead in rights enforcement. And so when Congress passes a statute that says this is how we're going to deal with this, here's a statutory scheme, then in those cases the court said we're going to lay our hands off. So there was a separation of powers issue at the federal level. There's no federalism issue. How should the federal courts evaluate the propriety of a Bivens action given a state supreme court's common law development of intrusion upon seclusion for wiretapping? There's no need to show deference on an alternative remedy ground. So I think this case fits squarely within Carlson v. Green. Now, there's no doubt that the circuits who have come the other way have focused a lot on Correctional Services Corporation v. Malesko. They're mistaken for two reasons in Malesko. First, they all found federal action lacking in those cases, so they're wrong for that reason. But here's the problem with Malesko. They believe that Malesko says that a Bivens action is precluded any time there is any alternative remedy. That's incorrect, and here's why. At the core of Malesko is the question whether a private organization, not an individual, but an organization acting under color of federal law could be sued under Bivens. This is why early on in its opinion in Malesko the court says exactly this. The parties agree that the question whether a Bivens action might lie against a private individual is not presented here. So if the issue that is the centerpiece of this case in front of us, Pollard's case, was not presented in Malesko, how can it compel a result here? This is exactly what the other courts have missed. They view Malesko as being a case about private versus public, and it's not. The bottom line is when you're dealing with an individual defendant, not an organizational defendant, Malesko is irrelevant, and there's further evidence in this I'd like to draw the court's attention to in Malesko itself. The heart of the court's reasoning on pages 70 and 71, they rely almost exclusively on FDIC versus Meyer, and that's very important because FDIC versus Meyer was a suit against a federal agency for a Bivens action. There is no question there about public versus private. It's simply organizational liability versus individual defendant liability, and here's how they relied on Meyer. Meyer made clear that the threat of deterrence against an individual's employer was not the kind of deterrence contemplated by Bivens. This case, Malesko, this case is in every meaningful sense the same. On the logic of Meyer, inferring a constitutional tort remedy against a private entity like Correctional Services Corporation is therefore foreclosed. Okay. So just to repeat, these circuit courts have misconstrued Malesko. They have viewed Malesko as public versus private, but that's not what Malesko is. Malesko is built, quote, on the logic of Meyer, and Meyer is a case about organizational liability, not a case about public versus private. Do you think Judge Motz misunderstands Malesko? I do, Your Honor. I think she understands the state action or the federal action requirement, but I do think she misunderstood Malesko. I think there's a notion that the federal government, excuse me, the Supreme Court is of a mind to curtail the Bivens cause of action. That seems to be the theme that runs through them. I think that is the theme. Certainly Scalia's concurrence in Malesko speaks quite clearly to that. But what's key is Malesko did not overturn Carlson v. Green. It could not have. This Court cannot interpret a sub silentio reversal of Supreme Court precedent. So we have to believe Carlson v. Green is good law, and if Carlson v. Green is good law, then that means Pollard states a cause of action. Federal prisoner, federal actor, federal constitutional claim. That states a Bivens cause of action. I'd like to turn to a couple practical concerns I think this Court should keep in mind. Even if it rejects the Carlson concept or finds it skeptical, even if it finds Malesko to be relevant to this case, this Court should be thinking about I think what to me is rather plain common sense, which is that it makes no sense to have the enforcement of one's constitutional rights turn on whether or not they find themselves in a public or private prison. Mr. Pollard had no choice whether he ends up in a public or private prison. Now, Judge Rustani, you may be correct that Med-Mal law might make him whole in one respect, but suppose he wants his constitutional rights for whatever expressive reason. We're saying to him, the Federal Government of the United States, he may not have those rights. That's just plain common – there's no point of law or logic that can justify that distinction. What constitutional right does he want to pursue here that he can't pursue in a state court against these individuals? I mean, there's assault, there's battery, there's Med-Mal. There's all kinds of state analogies for anything he might want to claim, isn't there? Fair question, Your Honor. He may be able to pursue these, but if he states a facially valid Eighth Amendment claim, do we know whether he has these cause of action? So he's unable to eat because he has two broken arms and they haven't provided him another way to feed himself. What's the tort cause of action for that? Now, he may be able to say, you owe me a duty under an innkeeper statute, and there is a couple cases out there where courts have applied innkeeper statutes to prisons. Suppose, you know, keep in mind this – I think if they are basically starving him, he has some kind of state law claim. I mean, you can't really assume that he doesn't. Well – Somebody has somebody under their control and starves him. That's not any kind of assault or battery or anything that he could sue on in state court. I mean, really. Your Honor, I'd like to know the cause of action. I offer that rhetorically, of course, but I think the fact that we can't put our finger on a cause of action here in this debate right here, that we say there must be something. We can't put our finger on it. It means that he's – I point out that this is not a constitutional claim such as one involving free speech or something of that nature. It's something which you have to practically invent the constitutional right. It's under the Eighth Amendment. You have to show deliberate indifference to medical needs. It's much easier to come up with a state cause of action than it is to come up with a federal cause of action, don't you think? I think you're right in many instances, Your Honor. But the question is whether a court on a prescreening evaluation under Section 1915A will know from a prisoner's complaint whether there is an alternative cause of action. Think of the case that the court just heard a half an hour ago in this case. It was an Eighth Amendment claim that they should have done better. to retain the particular prisoner. What is the cause of action there? Now, I can recall back from first-year torts that there's a Tarasoff case. I forget the full name. But there's a duty of a psychologist to warn family members that the patient may harm them. Now, should a district court judge in the Ninth Circuit, faced with a bare-bones pro se complaint, have to infer that there's a Tarasoff cause of action for something like that? So I understand, Judge Rustani, your concern. There could be cause of action. My point is not that there won't be, but that we won't know at the pleading stage under Section 1950A prescreening whether or not that cause of action will exist. I have two minutes left. I'll hold those. Michael Johnson, on behalf of the appellees. And I want to just start out by clarifying who the parties are here. There are five individual appellees who are named. It's Minnici, Acano, Spack, Stifer, and Manis. There's also a doctor. Dr. Lewis was not appealed. But you don't? And we don't represent him. We have no notice. So in the notice of appeal, the notice of appeal did not encompass the doctor. Is that what you're telling me? That's correct. And Defendant Uzzle is deceased, and the corporate entity is not here either.  So we're just dealing with these employees. Correct. And the reason I bring that up is because there was some discussion about the allegations and the nature of the wrong here. In particular, the, you know, inability to carry the tray. Pleading is unclear as to who's responsible for that or if anyone is being sued for that wrongdoing. Right. Well, this was knocked down on a prescreening. That's correct. You know, just these pro se prisoner complaints come in and they get prescreened. Right. It's not clear. There's not much here. There isn't much here. And it's not clear. If it had gone, it might have gotten in the subject of a rule, you know, a motion for a more definite statement or, you know. Correct. And I'm not sure whether the recent. So we need to look at the week. I think we construe the complaint, you know, in the light most favorable to the pro se. Understood. The pro se prisoner. Yes. And the reason I mention that, I'm not sure if Iqbal and the pleading requirements there are going to apply here. We don't. I mean, you're very. You're at this very, very preliminary stage. And to talk about Iqbal and what Iqbal means and how that might apply here is a whole other issue. Okay. Understood. This case in a way is similar to the Wilkie decision, which isn't discussed much in the briefs, but it is a 2007 United States Supreme Court action involving a Bivens claim against the Bureau of Land Management and a number of its employees. And what's interesting to me about that case and its application here is that the plaintiff alleged a rambling claim that includes a bunch of different types of conducts, and in their analysis of that, the Supreme Court started out by looking at what the claims were. And the Court said there are a variety of different claims, different types of claims. It might have a variety of different types of remedies. This is kind of a similar situation that we have here. The Court then did what the Court is supposed to do in these types of cases. It proceeded with a balancing issue. Counsel, in his arguments in the briefs and today, presents this as a very – I have all those cases. Tell me the name of the one you're talking about now. It's Wilkie. Oh, Wilkie. Okay. Thanks. And Wilkie has a very interesting quote in it, which I think should be kept in mind here. This is not a black-and-white type of case. In Wilkie, the Court, after looking at the remedies, says, This, then, is a case for Bivens Step 2, for weighing reasons for and against the creation of a new cause of action the way common law judges have always done. It's a balancing test. We need to look at the arguments for and against conferring a new remedy here, and we need to weigh those. It's clear, or it's important to keep in mind exactly what the plaintiff is asking for here. The appellant's not asking – the appellant's asking for a new remedy to be extended to him. This is not an issue where anything has been taken away from him. He has had existing remedies. He's asking for a new remedy. Well, if he were in a Federal prison, he would have this remedy, wouldn't he? He would. There are significant differences between employees of a Federal facility. I mean, he's in this private prison facility performing the same function as a Federally employed person. There are significant differences between a private employee. What's so significantly different? There are two significant legal differences. There are two of them. First of all, the qualified immunity defense. Richardson found the difference significant enough to hold that private employees are not entitled to the qualified immunity, which is a very powerful defense. The second significant difference, which is one of the keys here, is the availability of State law remedies. As against a Federal employee, you do not have the State law remedies. We could file a Tort Claims Act. File a Tort Claims Act. It's not very similar, right? In fact, the Tort Claims Act is based on State law. But much more limited, as counsel was pointing out, and I believe it was Carlson who specifically examined that issue and found that the Federal Tort Claims Act remedy was not a sufficient alternative because there's no punitive damages, there's no right to jury trial, because the United States has substituted in place of the individual so it could impact the deterrent effect. Those issues are not present here with the State law remedies. So my point being that there is a significant difference that must be considered in the second step of the Bivens analysis. Let me ask you. In regards to whether this new cause of action should be applied here. In these private prisons, let me ask you just a couple of educational matters. Under the contract, is there some sort of administrative remedy that's available through the Bureau of Prisons? There are administrative remedies available. There is a grievance procedure which can be followed. Yes, there is internal administrative remedies that were available. Through the Bureau of Prisons for a private prison? I'm not, I don't know the extent to which the Bureau of Prisons oversees that. I think that was Judge Pius's question. I'm not sure to what extent the Bureau of Prisons oversees the. But they oversee this very carefully, don't they? They have a contract, yes. I mean, they just don't turn these prisoners over to this facility, do they? And say, we're washing our hands. Go at it. There are very detailed and significant contracts which are not in the record. Very detailed arrangements that are worked out. I mean, you're incarcerating people. Correct. And getting back to the Bivens analysis, the question that we need to look at is the second step, this balancing. What alternative remedies are available? We need to look at the separation of powers concerns, which is really the basis for the Supreme Court's more recent reluctance to extend this remedy beyond where it's been extended thus far. Can I ask a question here? It seems to me that, I mean, there are a lot of discussions in these court of appeals cases which seem to me a bit kind of anticipating where the court is going post-Malesko. But we would be bound by circuit law. And I'm concerned with Castaneda. And you tell me why Castaneda doesn't answer my questions here. Well, the first reason is that quite recently, Castaneda was granted cert review by the United States Supreme Court. On September 30th, just last week, the U.S. Supreme Court did grant a review of Castaneda as well as a Second Circuit decision. The issue there is whether a provision of the Federal Tort Claims Act, I think it's Section 233, which deals with the public health service, is an exclusive remedy mandated by Congress which would foreclose a Bivens remedy. Now, it's interesting. That's the issue in Castaneda that's been certified? That's the issue that's been certified, correct. That could address some of the asymmetry issues that have come up, and it could address some other issues that are at play in this case. And it would be very interesting to see how the United States Supreme Court treats that. Now, keep in mind, that is a congressional remedy, and the question of whether that congressional remedy is exclusive. Here, we have a different question, which is, is the State law remedy an adequate alternative remedy? What other factors come into play? What are the pros and cons of implying a new remedy here against a private employee? Certainly, if in the end, I'll talk briefly. I'm still trying to understand this prison system a little bit, these private prisons. But when Congress authorized, did Congress authorize the BOP to enter these contracts? Or is it something that was just within their existing authority? I can't answer that. I don't know whether it's a congressional authority or whether it was an administrative prerogative. Can I ask you about the second cert case? You said they took cert in. Is that the same issue that was in Castaneda? You said, I asked you about, you said there were two developments. One was taking cert in Castaneda, and you said the other was taking cert in the Second Circuit case? Right. Maybe I wasn't clear. There's a circuit split between the Second Circuit case and Castaneda. The Second Circuit found that this section of the FTCA did foreclose a Bivens remedy. Foreclosed. Okay. And the Ninth Circuit found that it did not. Okay. So they're just taking up the question that was before the court in Castaneda. Right. Is that what you mean? Yes. And was the Second Circuit case in which they took cert? The Supreme Court only takes a grant cert where there's a circuit split. And it's the second. That's not true, but. It's not the only reason. Yes. But that's the basis for their grant cert. Wasn't the Second Circuit case that they took cert? It was the Second Circuit. Okay. Thank you. Sorry. Castaneda, I didn't think they had taken. I know. That would have been a surprise to me, too. They took the Second Circuit case. No, they took both, though. Oh, they did? Yes. Oh, okay. Sorry. I'm just not communicating very clearly here. And what's the Second Circuit case? I don't have the name of it in front of me. All right. Anyways, I want to talk briefly about the balancing test here and the impact of imposing liability on these private employees, given that there's clear recognition by the United States Supreme Court that a private employee is in a different position from a public employee. First of all, the private employee who's sued will not have the qualified immunity available to that employee that the Federal employee would have. Okay. And that immunity is very powerful, and they will lose that. So what will happen is the plaintiff will get a duplicate remedy, essentially, against the private employee who is without the defense that his – that a Federal employee would have. Okay. Who are the – okay. We've got some med mal claims possible in State court if they weren't – if they haven't been foreclosed by statute of limitations, which is irrelevant to our discussion. What other State causes of action would be involved? Well, it would be negligence. Presumably, again, the facts aren't real clear on what he's asserting, but, you know, I can't imagine that the Eighth Circuit requirement is more stringent than the California medical malpractice laws or the California negligence requirement. Thank you. It wouldn't seem to be. So – and the plaintiff is – the plaintiff is going to be fully compensated for whatever injuries he's claiming here. Why don't you just reclaim that? The State court claims a better remedy or, you know, a comparable one. The proof is easier. It is lesser. Punitive damages are available. You have a right to jury trial. So it's – it's – Well, you'd have a right to a jury trial on an Eighth Amendment claim. It's fully adequate. You did have a right to punitive damages on an Eighth Amendment claim. Okay. So it's coextensive. And the Supreme Court has said it doesn't have to be. Would the officers have – would your employees have any immunity defense in State court? They would not have the qualified immunity defense. Or any immunity under State law? Well, they would be subject to all the State laws that might be available to those claims. I mean, there's a MICRA issue, of course, which is a limitation on the – What issue? MICRA is a California law that addresses medical malpractice. Oh, okay. And there are other, obviously, State law aspects that would be dealt with. But not – yes, but there's nothing like qualified immunity under – No. Okay. So you would have that asymmetry. You know, one of the issues here is, well, not giving the Bivens remedy in this case results in an asymmetry between plaintiffs and public facilities versus Federal facilities. Well, but if you grant the right, then you've got asymmetries between the defense that's available to the private employees versus defenses available to the Federal employees. So there's going to be some asymmetry no matter which way you go. And so if that's a concern, then you need to look at whether or not, you know, which is going to be more burdensome than what the balancing shows. In our view, the balance of the issue is that there are asymmetries under 1983 litigation. Sure. So the asymmetry is not an obstacle that cannot be overcome. There is going to be some asymmetries. But the asymmetries by imposing liability here are greatly outweighed by the problems that if you do impose liability. Well, we're not imposing liability. We wouldn't be imposing liability. We're just allowing the case to go forward. Which is going to encourage. He may not have it. He may not, you know, there may be an Iqbal problem. There might be some other problem. You know. It's going to increase the expense of operating these facilities, which is going to get passed on to the Federal government at a time when our budget is, you know, the deficit is a significant issue. It's going to encourage litigation in private facilities versus Federal facilities. Inmates will find out very quickly that there's no qualified immunity to bar, you know. So they're going to be clamoring to go to private facilities rather than to Federal facilities. But the ones who are assigned to the private facilities will certainly be more likely to bring those actions. It's going to make the individuals who work in those facilities, it's going to make their job more difficult. I mean, this is a difficult job to begin with, and now they're going to be subject to this new claim without the defense that they might otherwise have. So it's going to be. I think, you know, I think they'd be, well, they're already subject to State law remedies. You want them, you suggest, well, let them sue them in State court. I mean, what's the difference in cost? I mean, I don't quite understand. It's a new cause of action. For example, here. No matter what happens here, they have always been subject to State law remedies, right? And will continue to be so. And that gets you, and my time is almost up, but that gets you full circle to the underlying rationale for Bivens, which is deterrence. There's not going to be any increase in deterrence by allowing this cause of action because the deterrence is already there by virtue of the State law. We started down this road because there weren't any remedies available against congressional employees, right? Isn't that how we started down this road? Well, Bivens started when someone broke into, some Federal DEA agents went into a guy's house and searched it and there was no remedy. All right. That's back to the beginning, beginning. Okay. And the question is how far is that going to, how far is that going to be extended? And, you know, we've gotten to the point where most of these issues are worked out, but the private, you know, the private agency was addressed by the Supreme Court, but the private employees has not yet been addressed, other than by the circuit court that you mentioned, the circuit court decisions. And by the way, there's actually a host of district court decisions as well. If you shepherdize those cases, you'll see that a lot of district courts are following the Alta case and the Holly case. So with no further questions, I will submit at this point. I think you had two minutes or a minute before. Thank you, Your Honor. Judge Rastani, you were pressing me on the point that wouldn't it be just easier for plaintiffs to just sue in Med-Mal or in some tort law, some realm of tort law. My point is not just that maybe it would or maybe it wouldn't be easier for the plaintiffs. I want to make clear to the court it would be easier for the court if we kept the Bivens cause of action here. If this, if what's going to happen to the Ninth Circuit is you're going to hear these cases all the time. There's going to be a district court judge who receives a complaint, and the And then the court's going to say, well, that's clearly an assault or that's a battery of some sort, an offensive touching. Now, what's the law under offensive touching? It requires specific intent, meaning not just the intent to put your hand on someone, but the intent to offend. Now, did an officer conducting a Terry stop have the intent to offend? What is the tort standard of care for an officer conducting his duty? Now, I'm not saying that couldn't be resolved. It could be. But that will be a Ninth Circuit case that this court will have to hear. Do you think we should wait for the Supreme Court in Castaneda? I don't think so at all, because Castaneda is whether or not a federal statute preempts a Bivens action. We're dealing with state law here. Whatever they say will not change that. Now, there could be some dicta where they talk more about how we have to cut back on Bivens. We all understand that theme in Bivens jurisprudence. But if you understand, if we pay attention to what my opponent suggested, or excuse me, if we acknowledge what he didn't mention, which is Carlson v. Green, Wilkie v. Robinson, the balancing test, it did not overrule Carlson v. Green, federal prisoner, federal actor, federal constitutional violation. Carlson v. Green is good law. That's what the court here, Ninth Circuit, said in Castaneda. And the Supreme Court is not going to be able to overrule that in Castaneda. A couple more points. Well, let me make one last point on qualified immunity. There's a real incongruency to what they're arguing, and I think the court picked up on it at the end. They're saying, don't sue us in Bivens. We don't have qualified immunity. Sue us in tort where we don't have qualified immunity. Okay, so the whole qualified immunity argument doesn't work. And even if there was some merit to it, the court in Richardson v. McKnight said no. We understand that argument. Someone's being sued for constitutional tort. You say you want qualified immunity. That's the defendant's argument. The Supreme Court said no. I leave that with the Court, and I appreciate their time. Thank you. Pollard v. Wackenhut is submitted at this time. And the Court's going to take a 10-minute recess.
judges: Restani, Hug, Paez